**STEPTOE LLP**
Carol R. Brophy (SBN 155767)
*cbrophy@steptoe.com*
One Market Plaza
Steuart Tower, Suite 1070
San Francisco, California 94105
Telephone: 415-365-6700 / Facsimile: 415-365-6699

**STEPTOE LLP**
Anthony G. Hopp *(pro hac vice forthcoming)*
*ahopp@steptoe.com*
227 West Monroe Street, Ste. 4700
Chicago, Illinois 60606
Telephone: 312-577-1300 / Facsimile: 312-577-1370

**STEPTOE LLP**
Melanie A. Ayerh (SBN 303211)
*mayerh@steptoe.com*
633 W. Fifth St., Suite 1900
Los Angeles, California 90071
Telephone: 213-439-9400 / Facsimile: 213-439-9599

Attorneys for Defendant
LAIRD SUPERFOOD, INC. (improperly sued as LAIRD
SUPERFOOD, INC., d/b/a
WWW.LAIRDSUPERFOOD.COM )

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUIS LICEA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LAIRD SUPERFOOD, INC., a Nevada corporation, d/b/a WWW.LAIRDSUPERFOOD.COM,<br><br>Defendant. | Case No. 3:26-cv-02912-JLS-VET<br>*Hon. Judge Janis L. Sammartino*<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**<br><br>*[Notice of Motion and Motion; Request for Judicial Notice; Declarations of Jason Vieth and Melanie Ayerh filed concurrently herewith]*<br><br>Time: July 16, 2026<br>Date: 1:30 pm<br>Dept: 4D |

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 8

II.     STATEMENT OF FACTS .......................................................................... 9

        A.      Licea is a Professional Plaintiff.................................................... 9

        B.      Licea Knowingly Purchased a Monthly Subscription ............................. 9

        C.      Laird Provided Post Purchase Autorenewal Acknowledgements and Notices .................................................................................. 13

        D.      The Complaint Allegations ............................................................ 14

III.    ARGUMENT ........................................................................................... 15

        A.      Applicable Standard Under Rule 12(b)(6) .................................... 15

        B.      Plaintiff Cannot Establish Reliance, Causation or Damages ................. 15

                1.      Licea is a Serial "Tester" Who Cannot Plausibly Allege Reliance or Injury ....................................................... 16

                2.      Licea Lacks Evidence of Causation Where he Admits That Changes to the Website Disclosures Would Not Affect his Purchase Behavior ............................................. 17

                3.      Licea *Knowingly* Purchased a Renewing Subscription and Received the Benefit of the Bargain ............................... 19

        C.      No Reasonable Consumer Would be Misled ....................................... 20

        D.      Licea's CLRA Claims are Deficient .............................................. 21

                1.      Licea Has Not Alleged a Cause of Action under the CLRA ....... 21

                2.      Licea Cannot Pursue a CLRA Claim Because he Did Not File a Venue Affidavit ...................................................... 23

                3.      Licea Did Not Comply with Section 1782 And Cannot Maintain a Claim for Damages Under The CLRA ...................... 23

2

E.    Licea Has Failed to Meet the Heightened Pleading Standard of Rule 9(b) and Dismissal of His Consumer Protection Claims is Required ....................................................................................... 25

F.    Plaintiff Cannot Seek Equitable Relief .................................................. 26

    1.    Legal Standard Applicable to Rule 12(b)(1) .............................. 26

    2.    Plaintiff Lacks Standing to Pursue Injunctive Relief ................. 26

    3.    Plaintiff Lacks Standing to Seek Equitable Relief Because he has an Adequate Remedy at Law ........................................... 27

G.    Plaintiff Cannot Pursue Punitive Damages ............................................ 29

IV.    CONCLUSION ....................................................................................... 29

MEMORANDUM OF POINTS AND AUTHORITIES

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Allen v. Similasan Corp.*,
No. 12cv0376–BTM–WMC, 2013 WL 5436648 (S.D. Cal. Sept. 27, 2013) .................................................................................................... 23, 24

*Arnold v. Hearst Mag. Media, Inc.*,
No. 19-cv-1969-WQH-MDD, 2021 WL 488343 (S.D. Cal. Feb. 10, 2021) ................................................................................................................ 17

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) ......................................................................................... 15, 21

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ..................................................................................... 26

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .............................................................................................. 15, 21

*Branch v. Tunnell*,
14 F.3d 449 (9th Cir. 1994) ....................................................................................... 12

*Byars v. Sterling Jewelers, Inc.*,
No. 22-cv-01330-LB, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) ..................... 17

*Castagnola v. Hewlett-Packard Co.*,
2012 WL 2159385 (N.D. Cal. June 13, 2012) .......................................................... 26

*Cattie v. Wal-Mart Stores, Inc.*,
504 F. Supp. 2d 939 (S.D. Cal. 2007) ...................................................................... 16

*Davidson v. Kimberly-Clark Corp.*,
No. C 14-1783 PJH, 2014 WL 3919857 (N.D. Cal. Aug. 8, 2014) ...................... 15

*Debono v. Cerebral Inc.*,
No. 22-cv-03378-AGT, 2023 WL 300141 (N.D. Cal. Jan. 18, 2023) ...... 17, 18, 20

*Doe v. Epic Games, Inc.*,
435 F. Supp. 3d 1024 (N.D. Cal. 2020) .................................................................... 22

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ..................................................................................... 20

*Freeman v. Time, Inc.*,
68 F.3d 285 (9th Cir. 1995) ....................................................................................... 20

*Frenzel v. AliphCom*,
76 F. Supp. 3d 999 (N.D. Cal. 2014) ........................................................................ 24

4

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
     528 U.S. 167 (2000)..................................................................................26

*Golikov v. Walmart Inc.*,
     No. 2:24-cv-08211-RGK-MAR, 2025 WL 648532 (C.D. Cal. Feb
     27, 2025.) ........................................................................................28, 29

*Guzman v. Polaris Indus. Inc.*,
     49 F.4th 1308 (9th Cir. 2022), *cert. denied*, 2023 WL 3937623 (June
     12, 2023) ..............................................................................................28

*Ham v. Hain Celestial Group, Inc,*,
     70 F. Supp. 3d 1188 (N.D. Cal. 2014)......................................................26

*Herrera v. Estee Lauder Cos., Inc.*,
     No. SACV 12-01169-CJC(ANx), 2012 WL 12507876 (S.D. Cal.
     Sept. 20, 2021) ......................................................................................15

*Hoard v. Cap. One, N.A.*,
     No. 24-CV-1133-MMA-VET, 2024 WL 4611449 (S.D. Cal. Oct. 29,
     2024) .................................................................................................27, 28

*Hodgers-Durgin v. de la Vina*,
     199 F.3d 1037 (9th Cir. 1999) ................................................................26

*Kearns v Ford Motor Co.*,
567 F.3d 1120(9th Cir. 2009) ....................................................................25

*Ketayi v. Health Enrollment Grp.*,
     No.: 20-cv-1198-GPC-KSC, 2021 WL 2864481 (S.D. Cal. July 8,
     2021) ......................................................................................................28

*Kwikset Corp. v. Superior Court*,
     51 Cal. 4th 310 (2011) .......................................................................15, 17

*Lavie v. Procter & Gamble Co.*,
     105 Cal.App.4th 496 (Ct.App.2003) .........................................................21

*Leventhal v. Streamlabs LLC*,
     No. 22-CV-01330-LB, 2022 WL 17905111 (N.D. Cal. Dec. 23,
     2022) ......................................................................................................22

*Licea v. Brown Sugar, LLC*,
     No. B310487, 2023 WL 543456 (Cal. Ct. App. Jan. 27, 2023)............9, 16, 18, 19

*Lopez v. YP Holdings, LLC*,
     No. CV 18-8791-MWF, 2019 WL 6354387 (C.D. Cal. July 9, 2019).................19

*Lujan v. Defenders of Wildlife*,
     504 U.S. 555 (1992)..................................................................................26

5
MEMORANDUM OF POINTS AND AUTHORITIES

*Maisel v. S.C. Johnson & Son, Inc.*,
   No. 21-cv-00413-TSH, 2021 WL 1788397 (N.D. Cal. May 5, 2021) .................25

*Marolda v. Symantec Corp.*,
   672 F. Supp. 2d 992 (N.D. Cal. 2009).................................................................21

*Mayron v. Google LLC*,
   54 Cal.App.5th 566 (2020) ..................................................... 15, 17, 18, 20

*Morgan v. AT&T Wireless Servs., Inc.*,
   177 Cal. App. 4th 1235 (2009) ............................................................................23

*Morgan v. Wallaby Yogurt Co.*,
   No. 13–cv–00296–WHO, 2014 WL 1017879 (N.D. Cal. Mar. 13, 2014)...........26

*Morrell v. WW Int'l, Inc.*
   *551 F. Supp. 3d 173 (S.D.N.Y. 2021).* ..............................................................22

*Nguyen v. The Lovesac Co.*,
   No. 2:24-cv-01293-TLN-JDP, 2025 WL 950511 (E.D. Cal. Mar. 28, 2025).......28

*Outboard Marine Corp. v. Superior Court*,
   52 Cal. App. 3d 30 (1975) ..................................................................................23

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998) ..............................................................................12

*Phan v. Sargento Foods, Inc.*,
   No. 20-cv-09251-EMC, 2021 WL 2224260 (N.D. Cal. June 2, 2021) ................27

*Philips v. Ford Motor Co.*,
   No. 14–CV–02989–LHK, 2015 WL 4111448 (N.D. Cal. July 7, 2015) .............27

*Price v. Synapse Group, Inc.*,
   No. 16-cv-01524-BAS-BLM, 2017 WL 3131700 (S.D. Cal. July 24, 2017) ..................................................................................................................22

*Rodriguez v. Autotrader.com, Inc.*,
   No. 2:24-cv-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) ..................................................................................................................17

*Roper v Big Heart Pet Brands, Inc.*,
   510 F. Supp. 3d 903 (E.D. Cal. 2020) ................................................................28

*Roz v. Nestle Waters N. Am., Inc.*,
   No. 2:16-cv-04418-SVW-JEM, 2017 WL 132853 (C.D. Cal. Jan. 11, 2017*)* ......................................................................................................................20

*Ruszecki v. Nelson Bach USA Ltd.*,
   No. 12–cv–495–L-NLS, 2015 WL 6750980 (S.D. Cal. June 25,2015)................24

MEMORANDUM OF POINTS AND AUTHORITIES

*Rutter v. Apple Inc.*,
 No. 21-CV-04077-HSG, 2022 WL 1443336 (N.D. Cal. May 6, 2022) .... 15, 17, 25

*Sonner v. Premier Nutrition Corp.*,
 962 F.3d 1072 (9th Cir. 2020) ................................................................. 27

*Spokeo, Inc. v. Robins*
 136 S. Ct. 1540 (2016) ............................................................................ 26

*Thompson v. Allen Cnty.*,
 115 U.S. 550 (1885) ................................................................................ 28

*In re Tobacco II Cases*,
 46 Cal. 4th 298 (2009) ....................................................................... 15, 16

*Turnier v. Bed Bath & Beyond Inc.*,
 517 F. Supp. 3d 1132 (S.D. Cal. 2021) ............................................. 21, 22

*Waller v. Hewlett-Packard Co.*,
 2011 WL 6325972 (S.D. Cal. Dec. 16, 2011) .......................................... 24

*Warner v. Tinder Inc.*,
 105 F. Supp. 3d 1083 (C.D. Cal. 2015) .................................................. 20

*Whitmore v. Arkansas*,
 495 U.S. 149 (1990) ................................................................................ 26

*Williams v. Gerber Prods. Co.*,
 552 F.3d 934 (9th Cir.2008) ................................................................... 20

*Wilson v. Frito-Lay N. Am., Inc.*,
 260 F. Supp. 3d 1202 (N.D. Cal. 2017) .................................................. 16

*Zapata Fonseca v. Goya Foods Inc.*,
 No. 16-CV-02559-LHK, 2016 WL 4698942 (N.D. Cal. Sept 8, 2016) ....... 28

*Zeichner v. Nord Security Inc.*,
 No. 24-cv-02462-JSC, 2024 WL 4951261 (N.D. Cal. Dec. 2, 2024) .......... 28

*Zeller v. Optavia LLC*
 No.: 22-cv-434-DMS-MSB, 2024 WL 1207461 (S.D. Cal. Mar. 14, 2024). ....... 22

**Statutes**
Cal. Civ. Code § 1770 ................................................................................. 23

Cal. Civ. Code § 1780(d) ............................................................................ 23

Cal. Civ. Code § 1782(a) ........................................................................ 23, 24

Cal. Civ. Code § 3294 ................................................................................. 28

MEMORANDUM OF POINTS AND AUTHORITIES

## I.      <u>INTRODUCTION</u>

Plaintiff Luis Licea ("Licea" or "Plaintiff") claims that he unwittingly enrolled in an automatically renewing subscription offered by Defendant Laird Superfood, Inc. ("Laird"). But his theory collapses under its own weight. Plaintiff does not challenge the clear, conspicuous pre-purchase disclosures describing the nature of the subscription he selected. Instead, he contends that he was somehow duped into purchasing that subscription because Laird's *cancellation* and *post-purchase* disclosures were allegedly inadequate. That theory is implausible and contradicted by the undisputed facts. There is no dispute that Plaintiff *knowingly* enrolled in a 30-day, automatically renewing subscription for peanut butter protein bars. There is likewise no dispute that, before completing his purchase, Plaintiff was presented—through each step of the transaction process—with the terms of Laird's subscription program, including the applicable cancellation policy and procedures. He proceeded with the purchase nonetheless. Plaintiff also received an advance, post-purchase notice of a forthcoming renewal charge and was given the opportunity to cancel before any additional charge was incurred. He chose not to do so. Instead, Plaintiff allowed the renewal to proceed, incurred a second charge, and then canceled his subscription immediately thereafter. He appears to have maintained his subscription just long enough to incur one renewal charge, and then successfully canceled it.

Plaintiff's allegations fit a familiar pattern. He is a serial litigant who has filed numerous lawsuits asserting purported violations of California's Auto-Renewal Law ("ARL"), alongside hundreds of similar consumer actions brought through the same counsel. This case follows the same formula: generic, boilerplate allegations untethered to any plausible claim of deception or injury, brought to extract nuisance settlements. The law requires more. Plaintiff does not—and cannot—plausibly allege that he was misled, that Laird misrepresented any material fact, that he did not know how to or otherwise lacked a meaningful opportunity to cancel his subscription, or that he suffered any injury attributable to Laird's conduct. Plaintiff cannot establish

MEMORANDUM OF POINTS AND AUTHORITIES

standing or a statutory violation under California's consumer protection laws; his claims fail as a matter of law and should be dismissed in their entirety.

## II.    STATEMENT OF FACTS

### A.    Licea is a Professional Plaintiff

Licea is a serial "tester" who has filed hundreds of lawsuits through the Pacific Trial Attorneys law firm, including multiple recent ARL actions asserting materially identical boilerplate allegations.[1] Plaintiff has alleged in prior ARL lawsuits that he is "a blind California consumer," who polices company websites because, "as a consumer advocate for the blind" he seeks "to determine whether [defendant] would abide by its obligations under California law." *Licea v. Brown Sugar, LLC*, No. B310487, 2023 WL 543456, at *1 (Cal. Ct. App. Jan. 27, 2023).[2] Consistent with that admission, it is clear that Plaintiff did not access Laird's website as a bona fide consumer relying on its disclosures. Rather, he visited the site to "test" and critique its auto-renewal features in order to manufacture a claim.

### B.    Licea Knowingly Purchased a Monthly Subscription

On October 14, 2025, Licea enrolled in a monthly subscription through Laird's website, https://www.lairdsuperfood.com (the "Website"), to purchase a ten pack of Peanut Butter Protein Bars. (Compl. ¶¶ 1, 27.) To complete the transaction, Licea was required to proceed through the Website's multi-step e-commerce checkout process described below.

Product and Order Selection: At the initial order selection stage, Licea was required to select between two prominently displayed purchase options: (1) an automatically renewing subscription or (2) a one-time purchase. The subscription option was displayed in a prominent blue box titled "**Create Recurring Subscription-Save 20%**" in large, bold text. (Compl. ¶16.) That option advertised savings of "20% forever" and allowed Plaintiff to select a delivery frequency—every

---

[1] Declaration of Melanie A. Ayerh "Ayerh Decl." ¶ 2; Ex. 1.
[2] Available at https://www.casemine.com/judgement/us/63d749e9fdee5a5a2ef2df5c (last accessed May 25, 2026)

MEMORANDUM OF POINTS AND AUTHORITIES

30, 60, or 90 days. (*Id.*) The subscription option also disclosed multiple additional benefits, including additional discounts on subsequent orders, and free shipping on qualifying purchases. (*Id.*) It further disclosed that subscribers could easily manage or "cancel anytime." (*Id.*)

Alternatively, Plaintiff could have selected a one-time purchase option, prominently presented in bold font as "**One-time Purchase**." (*Id.*) The one-time purchase did not offer any discounts or savings options. The Website's order selection page is depicted below. (*Id.*)



Plaintiff selected the "Create Recurring Subscription-Save 20%" option, chose a 30-day delivery frequency, clicked the prominent red "**Subscribe**" button and received the associated discount on his initial order, resulting in a total charge of $21.15.[3] (*Id.* ¶¶ 1, 27.) Plaintiff does not allege that he failed to review, read or understand any of the above disclosures. Nor does he claim that, in selecting the "**Subscribe**" button, he intended anything other than to choose a discounted,

---

[3] Plaintiff also purchased an optional "Carbon Offsets & Shipping Protection" plan for $1.15. Plaintiff does not challenge that additional $1.15 charge.

MEMORANDUM OF POINTS AND AUTHORITIES

recurring subscription. The subsequent steps he took to complete his purchase confirm that he was repeatedly informed that he was enrolling in an automatically renewing subscription and he proceeded with that understanding at each stage of the transaction.

**"Checkout":** Plaintiff proceeded with his purchase to the checkout page with the relevant disclosures below. (*Id*. ¶17.)[4]



---

[4] The Complaint selectively excerpts portions of the Website's disclosures, thereby presenting an incomplete and misleading depiction of the relevant webpages. Moreover, the hyperlinks identified in the Complaint do not lead to the images or content as portrayed. Laird disputes Licea's characterization of the Website disclosures; however, even accepting Licea's allegations as true for purposes of resolving Laird's motion to dismiss, his claims fail as a matter of law.

11

The checkout page provided multiple additional disclosures confirming that Plaintiff was purchasing an automatically renewing subscription. Specifically, the phrase "recurring" subtotal appeared directly beneath the purchase total. (*Id*.) In addition, immediately below the prominent "Pay now" button, the page displayed the following disclosure in gray font, against a white background: "one or more items in your cart is a deferred or recurring purchase." (*Id*.) The disclosure further stated: "By continuing with your payment, you agree that your payment method will automatically be charged at the price and frequency listed on this page until it ends or you cancel. All cancellations are subject to the cancellation policy." (*Id*.) The phrase "cancellation policy"—the only underlined text within that paragraph—appeared as a hyperlink that generated a pop-up disclosure stating, in relevant part: "If you want to cancel or change your subscription, you can do it at any time. Your order confirmation emails have links to your order. You can manage your subscription from there." (*Id*. ¶ 22.) Another "cancellation" hyperlink also displayed in blue and underlined at the bottom of the page, provided the same language. (*Id*.) Laird's "Terms of Service" disclosures, located immediately adjacent to the "cancellation" hyperlink further explain the subscription program and provide detailed instructions for cancellation. (Declaration of Jason Vieth, "Vieth Decl." ¶6; Ex. A.)[5] The Terms of Service discloses that customers may select recurring shipments, set delivery frequency, and cancel or modify subscriptions by logging into their account and navigating to the "Manage My Subscriptions" page. (*Id*.) It also discloses that

---

[5] The "Terms of Service" disclosures attached as Ex. A_to the declaration of Jason Vieth is a true and correct copy of the Website's Terms of Service publicly available to consumers accessing the Website. A plaintiff cannot avoid dismissal under Rule 12(b)(6) by strategically presenting an incomplete record and omitting references to documents on which the claims necessarily rely. *Parrino v. FHP, Inc.,* 146 F.3d 699, 705–06 (9th Cir. 1998), as amended (July 28, 1998). Consistent with this policy, courts may consider documents referenced in the complaint, whose contents are alleged and whose authenticity is undisputed, even if they are not physically attached to the pleading. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

12

MEMORANDUM OF POINTS AND AUTHORITIES

cancellations must be made at least two days before the next scheduled shipment and that customers may alternatively cancel or modify subscriptions by calling Laird Superfood at (888) 670-6796. (*Id*.) Licea does not allege that he failed to see, review or understand these disclosures prior to purchase. His attempt to selectively present only partial information about these disclosures does not negate their existence or his opportunity to review them prior to completing the purchase.

C. **Laird Provided Post Purchase Autorenewal Acknowledgements and Notices**

On November 7, 2025, Plaintiff received an email reminding him that his next Laird Superfood shipment was renewing on November 13, 2025. (Vieth Decl. ¶ 7; Ex. B.) Consistent with the Website's "Terms of service", that email provided Plaintiff an opportunity to cancel his subscription, via a blue, bolded "Manage Your Subscription" link. Licea could modify his shipping frequency or cancel his subscription, which would have prevented any subsequent charges if done within 48 hours. (*Id*.) Laird's records reflect that the November 7 email was successfully delivered to Licea at 9:46 p.m. (Pacific Time), and that Licea opened it minutes later, at 9:51 p.m. (Pacific Time). (*Id*.) The Complaint omits any reference to this communication, a gross misrepresentation that is dispositive.[6]

Despite receiving a reminder of this renewing subscription, Licea did not cancel his subscription within 48 hours. As a result, on November 13, 2025, he was charged $28.95[7] for the subsequent shipment. (Compl. ¶ 27.) Licea alleges that, upon noticing the charge, he cancelled his subscription "shortly thereafter," and does not claim to have encountered any difficulty in doing so. (*Id*. ¶ 27.) Notably, Licea does not allege that he had any difficulty determining how to cancel his subscription, that

---

[6] Plaintiff selectively pleads a single "post-transaction email" from Laird—the November 13, 2025 order confirmation on his auto-renewal. (Compl. ¶ 25.) This borders bad faith at best. Plaintiff was well aware of the November 7 communication, and his counsel had a duty to disclose the same to the Court.
[7] Plaintiff paid $8.95 for shipping on the subsequent recurring order because the subscription order total did not meet the minimum order amount for free shipping. Plaintiff does not challenge the shipping fee.

MEMORANDUM OF POINTS AND AUTHORITIES

Laird's disclosures or purported omissions somehow prevented him from cancelling, or that Laird failed to process or honor his cancellation request. Nor does he allege that he sought and was denied a refund, or that he failed to receive the product associated with the subsequent charge. Licea does not allege that he did not receive the Peanut Butter Protein bars he desired, that they were unsatisfactory or that he otherwise paid for a product he did not want. Instead, Licea claims that he "reasonably believed that [he] was making a stand-alone purchase of the Product for a one-time fee instead of an automatically renewing subscription with an automatic monthly fee." (*Id.* ¶ 50.) That allegation is contradicted by the record described above and fails to plausibly state a claim.

### D. The Complaint Allegations

Licea alleges that Laird violated California's ARL by failing to adequately present certain automatic renewal terms prior to checkout. (*Id.* ¶ 24.) Specifically, he challenges the sufficiency of Laird's cancellation disclosures under section 17602 (a)(1). (*Id.* ¶¶ 18, 23, 57.) Licea also contends that Laird's post-transaction communications failed to include all information required by section 17602(a)(3). (*Id.* ¶ 26.) Notably, these allegations are limited to the adequacy of ancillary terms—namely, the cancellation procedures and post-transaction confirmations. Licea does not allege that Laird failed to adequately disclose the core terms of the subscription program prior to the purchase.

Licea alleges that he "would consider" making purchases from the Website in the future if assured that Laird's checkout process complies with the ARL. (*Id.* ¶ 31.) He does not allege that he would have foregone his initial purchase absent the purported deficiencies, nor does he explain how any additional detail regarding cancellation procedures or post-transaction disclosures would have impacted his purchasing decisions. He does not allege an intent to avoid Laird's recurring subscription offerings in the future.

MEMORANDUM OF POINTS AND AUTHORITIES

## III.  <u>ARGUMENT</u>

### A.  **Applicable Standard Under Rule 12(b)(6)**

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." (*Id.)* Furthermore, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545.

### B.  **Plaintiff Cannot Establish Reliance, Causation or Damages**

The UCL, FAL, and CLRA each require plaintiffs to (1) plead an economic injury, and (2) show that the injury was caused by the challenged conduct." *Rutter v. Apple Inc*., No. 21-CV-04077-HSG, 2022 WL 1443336, at *4 (N.D. Cal. May 6, 2022) (*citing Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011) (UCL and FAL); *Herrera v. Estee Lauder Cos., Inc.,* No. SACV 12-01169-CJC(ANx), 2012 WL 12507876, at *2 (S.D. Cal. Sept. 20, 2021) (regarding CLRA). These three claims may be analyzed together by the Court. *See Rutter*, 2022 WL 1443336 at *8 (collecting cases). "The relevant inquiry for standing purposes is whether a defendant's unlawful conduct **caused** the plaintiff to part with money." *Mayron v. Google LLC*, 54 Cal.App.5th 566, 575 (2020) (emphasis added); *In re Tobacco II Cases*, 46 Cal. 4th 298, 306, 326 (2009) (plaintiffs must establish both "actual reliance on the allegedly deceptive or misleading statements" and "that the misrepresentation was an immediate cause of the injury-producing conduct"); *see also Davidson v. Kimberly-Clark Corp*., No. C 14-1783 PJH, 2014 WL 3919857, at

MEMORANDUM OF POINTS AND AUTHORITIES

*9 (N.D. Cal. Aug. 8, 2014) ("[T]o maintain a claim under the FAL and CLRA . . . a plaintiff must plead facts showing that she relied on the defendant's alleged misrepresentation.").

### 1. Licea is a Serial "Tester" Who Cannot Plausibly Allege Reliance or Injury

California's consumer protection statutes are not vehicles for opportunistic litigation. Proposition 64 was enacted to curb abuse by limiting standing to plaintiffs who have suffered an actual injury caused by the challenged conduct. *In re Tobacco II Cases*, 46 Cal. 4th at 316–17. Courts routinely reject claims where a plaintiff manufactures standing by making a purchase for the purpose of litigation rather than because of any allegedly misleading conduct. In *Cattie v. Wal-Mart Stores, Inc.*, the court dismissed claims where the plaintiff's purchase appeared to be nothing more than "a token" made to create standing, warning that allowing such claims would undermine Proposition 64. 504 F. Supp. 2d 939, 946–49 (S.D. Cal. 2007). The same principle applies here.

Licea is a serial litigant who has filed hundreds of nearly identical consumer lawsuits—many asserting ARL and ADA violations—through the same counsel. His complaints routinely recycle the same boilerplate allegations regarding reliance, causation, and injury. In a near identical case dismissed by the California Court of Appeal, Plaintiff characterized himself as a "blind California consumer" who visits websites not as an ordinary consumer, but "to determine whether [a company] would abide by its obligations under California law." *Licea,* 2023 WL 543456, at *1.[8] A plaintiff who visits a website for the purpose of identifying legal violations—not to make a genuine purchasing decision—cannot plausibly allege that he relied on the challenged representations when choosing to transact. Courts consistently dismiss

---

[8] *Licea v. Caraway Home Inc.,* 655 F. Supp. 3d 954, 964 (C.D. Cal. 2023) ("Mr. Ferrell appears to work with multiple "tester" plaintiffs to drum up these lawsuits, though Mr. Licea may be the primary one.")

MEMORANDUM OF POINTS AND AUTHORITIES

claims brought by "tester" plaintiffs where the alleged injury is manufactured rather than real. *See, e.g., Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1209–10 (N.D. Cal. 2017) (no reliance where plaintiff purchased products at counsel's direction); *Rodriguez v. Autotrader.com, Inc.*, No. 2:24-cv-08735-RGK-JC, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) (no injury where plaintiff visited website to create claim); *Byars v. Sterling Jewelers, Inc.*, No. 22-cv-01330-LB, 2023 WL 2996686, at *3 n.4 (C.D. Cal. Apr. 5, 2023) (same). Plaintiff set out to generate a claim—not to make an informed purchasing decision. That is not injury, and it does not create standing. His claims should be dismissed for this independent reason.

 2. <u>Licea Lacks Evidence of Causation Where he Admits That Changes to the Website Disclosures Would Not Affect his Purchase Behavior</u>

Purported violations of California's ARL may be enforced through the UCL, FAL, and CLRA, however courts are clear that liability cannot rest on statutory technicalities alone. A plaintiff must plausibly allege—and ultimately prove—that the alleged violations caused him to lose money or property. *Arnold v. Hearst Mag. Media, Inc.*, No. 19-cv-1969-WQH-MDD, 2021 WL 488343, at *6 (S.D. Cal. Feb. 10, 2021); *Mayron v. Google LLC*, 54 Cal. App. 5th 566, 574–77 (2020); *Rutter*, 2022 WL 1443336, at *6; *Debono v. Cerebral Inc.*, No. 22-cv-03378-AGT, 2023 WL 300141, at *1 (N.D. Cal. Jan. 18, 2023). A plaintiff must allege that he would not have entered into the transaction had the defendant complied with the ARL. *Mayron*, 54 Cal. App. 5th at 574–75 (plaintiff must allege he "would not have [purchased] had the disclosures been provided") (*citing Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 317.)

The Complaint falls far short of that standard. Licea challenges the adequacy of Laird's autorenewal disclosures—focusing on font size, placement, and the level of detail regarding its cancellation policy and procedure disclosures—but he nowhere alleges that he would ***decline*** to enroll in the auto-renewing subscription if those

17

MEMORANDUM OF POINTS AND AUTHORITIES

disclosures had been any different. That omission is dispositive. Indeed, Licea alleges the opposite. He claims that he "would purchase either the product or other products from Defendant again in the future if [he] could feel sure that Defendant's checkout flow screens accurately reflected the true nature of Defendant's offers [the cancellation policy]." (Compl. ¶ 31.) Licea effectively concedes that the purported deficiencies in the Website's cancellation disclosures would not change his purchasing decision. Courts routinely dismiss ARL-based claims on precisely this basis. In *Mayron*, the court affirmed dismissal where the plaintiff alleged he "would have purchased and maintained" the product even absent the alleged ARL violations, finding that such allegations defeat any causal link between the violation and the claimed economic injury. 54 Cal. App. 5th at 574 (affirming dismissal where the plaintiff alleged he "would have purchased and maintained the added Google Drive capacity even if Google had complied with the automatic renewal law" because the complaint "does not show a causal link between plaintiff's payments and Google's alleged violations," and thus could not establish statutory standing). Likewise, in *Debono*, the court dismissed claims where plaintiffs failed to plead "that they wouldn't have subscribed" if disclosures had been compliant. 2023 WL 300141, at *1.

More recently, a California appellate court affirmed dismissal of a copycat case filed by Licea. *Licea*, 2023 WL 543456, at *1. In that case, Licea alleged he had been charged for the defendant's services after a free trial in violation of the ARL. He alleged injury based on this charge. *Id*. Elsewhere in the complaint, Licea alleged that he "would like to use [defendant]'s services again in the future and will likely do so, but would like to ensure that [defendant] offers such services fairly and in compliance with its obligations under California law." *Id*. The court held that whether or not defendant had complied with the ARL, Licea had pled himself out of a claim. It held Licea's "allegations suggest that Licea would have purchased and maintained [defendant's services] even if [defendant] had complied with the [ARL]--

18

a concession by Licea that the alleged absence of required ARL disclosures did not cause any injury." *Id.*, *6. The court concluded that this concession was "fatal" to Licea's standing to pursue a his claims. *Id.*

Here too, while Laird disputes that its website disclosures violate the ARL, Licea's own allegations demonstrate that the Website's cancellation disclosures and post purchase acknowledgement did not factor in his purchasing decision.[9] Because he does not plausibly allege that he would have acted differently absent the purported ARL violations, he cannot establish reliance or causation—and his ARL-based claims must be dismissed as a matter of law.

### 3. Licea *Knowingly* Purchased a Renewing Subscription and Received the Benefit of the Bargain

Licea lacks standing for a third reason: he did not rely on any allegedly deficient disclosures and received the full benefit of his bargain. Although Licea alleges that he was charged for an auto-renewing subscription without consent (Compl. ¶ 31), he does not allege any facts in support of that contention.  He does not allege that he was unaware of the Website's disclosures regarding the subscription or its terms before placing his order. Nor does he claim that he failed to review or understand the numerous disclosures discussed in Section II.B., or that he was somehow misled into believing that he was purchasing anything other than a subscription—particularly given that he selected the "Create Recurring Subscription" option, received a 20% discount, selected the prominent "Subscribe" button, and was notified of a renewing charge. Indeed, Licea received advance notice of his subscription renewal approximately one week before the recurring charge was applied, which clearly informed him of the upcoming charge and how to cancel. He was therefore aware that he could avoid the renewal and associated fee by canceling at any time.

---

[9] This is not surprising. *Even if* there were deficiencies in the Website's cancellation disclosures, Plaintiff did not need the Website's cancellation policy (or post purchase acknowledgements) to understand that he was enrolling in a subscription program. That fact is not challenged by the complaint.

MEMORANDUM OF POINTS AND AUTHORITIES

As to the purported deficiencies in the checkout disclosures, Licea does not allege that he read, relied on, or was misled by them in any way. That omission is fatal: a plaintiff must allege actual exposure to and deception by the challenged disclosures, not merely that they could have been clearer. *See Lopez v. YP Holdings, LLC*, No. CV 18-8791-MWF (MAAx), 2019 WL 6354387, at *5 (C.D. Cal. July 9, 2019) ("Plaintiff has expressly agreed to the terms of the agreement, including the automatic renewal provision, and fails to allege that she paid the renewal fees because of any failure to disclose or improper conduct by Defendants."); *Mayron*, 54 Cal. App. 5th at 575 (requiring a causal link between the alleged deficiency and payment). Finally, where, as here, the plaintiff successfully cancels the subscription, courts reject claims that the cancellation process inflicted any cognizable harm. *See Debono*, 2023 WL 300141, at *2.

Licea received exactly what he bargained for—ten peanut butter protein bars— and thus obtained the benefit of his bargain. *See Roz v. Nestle Waters N. Am., Inc.,* 2017 WL 132853, at *7 (C.D. Cal. Jan. 11, 2017*)* ("[P]aying money for a product, while technically a 'loss' of that money, does not necessarily qualify as an injury…the payer has received something of equal or greater value. Therefore, not all payments are injuries..."). His dissatisfaction after the fact does not convert a completed and undisputed exchange of value into a cognizable injury in fact or economic loss. *See generally Warner v. Tinder Inc*., 105 F. Supp. 3d 1083, 1094 (C.D. Cal. 2015) ("[B]eing induced to purchase a product one would not otherwise have purchased is not loss of money or property within the meaning of the statute as long as one still receives the benefit of the bargain.").

**C.    No Reasonable Consumer Would be Misled**

Under California's Unfair Competition Law (UCL) and Consumer Legal Remedies Act (CLRA), "the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled". *Ebner v. Fresh, Inc.,* 838

MEMORANDUM OF POINTS AND AUTHORITIES

F.3d 958, 965 (9th Cir. 2016); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir.2008). Dismissal is appropriate where a Court can conclude as a matter of law that members of the public are not likely to be deceived. *Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995). The reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 509 (Ct.App.2003).

The Complaint does not plausibly allege that a reasonable consumer would be misled into believing that a purchase clearly labeled as a "Subscription"—with recurring delivery and payment terms—was a one-time transaction. Licea does not actually challenge the Website's subscription disclosures. He does not allege that Laird failed to disclose that his purchase would automatically renew, that recurring charges would be incurred, or that delivery would occur at monthly intervals. In light of the Website's disclosures, a reasonable consumer would not assume that the purchase was a one-time transaction. Absent plausible allegations that the challenged disclosures would mislead a reasonable consumer about the fundamental nature of the transaction, Licea's claims fail as a matter of law.

### D.    Licea's CLRA Claims are Deficient

#### 1.    Licea Has Not Alleged a Cause of Action under the CLRA

Licea's CLRA claim fails because it amounts to nothing more than a formulaic recitation of statutory language untethered to any specific facts. *See Twombly*, 550 U.S. at 555, 570; *Iqbal*, 556 U.S. at 678. The Complaint parrots two statutory subsections—1770(a)(5) and (a)(9)—without alleging facts showing that Laird made any actionable misrepresentation, let alone that Licea relied on one. It includes no allegations tying those statutory provisions to Licea's actual experience, and no facts supporting the essential elements of misrepresentation, reliance, or resulting harm. *See Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002–03 (N.D. Cal. 2009). Critically, Licea does not allege that the Website failed to disclose that his purchase

21

MEMORANDUM OF POINTS AND AUTHORITIES

would automatically renew. Nor does he plausibly (or credibly) allege that he believed he was entering into a one-time transaction. Absent such allegations, his claim under section 1770(a)(5) necessarily fails. *See Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132, 1137 (S.D. Cal. 2021) (dismissing CLRA claim under section 1770(a)(5) where plaintiff failed to allege that the automatic renewal terms were not disclosed prior to purchase).

Licea's claim under section 1770(a)(9) fares no better. He alleges, in conclusory fashion, that Laird advertised goods without intent to sell them as advertised, but pleads no facts supporting that theory. He does not allege that the product price, discount, or subscription benefits differed from what was promised. Such bare recitations are insufficient as a matter of law. *Turnier*, 517 F. Supp. 3d at 1137 (rejecting section 1770(a)(9) claim where plaintiff failed to allege that the product or benefits differed from what was advertised). At bottom, Licea attempts to bootstrap an alleged technical violation of the ARL into a CLRA claim. That effort fails because the Complaint pleads no facts demonstrating deception—only that Laird purportedly failed to comply with Licea's interpretation of ARL disclosure requirements. Courts reject such conclusory claims. *See Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1047 (N.D. Cal. 2020) (dismissing CLRA claim where statutory subsections were "unsupported" by factual allegations).

Moreover, the Complaint's reliance on cases recognizing that ARL violations may, in some circumstances, support CLRA claims is misplaced. Those cases involved detailed, fact-specific allegations of deceptive conduct that are entirely absent here. For example, in *Zeller v. Optavia LLC*, the plaintiff alleged that the defendant affirmatively misrepresented recurring subscriptions as one-time purchases. No. 22-CV-434-DMS-MSB, 2024 WL 1207461, at *6 (S.D. Cal. Mar. 14, 2024). In *Leventhal v. Streamlabs LLC*, the plaintiff alleged a misleading pricing interface that suggested a one-time charge and obscured cancellation terms. No. 22-CV-01330-LB, 2022 WL 17905111, at *6 (N.D. Cal. Dec. 23, 2022). Other cases,

22

MEMORANDUM OF POINTS AND AUTHORITIES

including *Price*, *Zeichner,* and *Morrell*[10], similarly involved plausible allegations that consumers were unaware of the automatic renewal features altogether. (Compl. ¶ 43.) Here, by contrast, Licea does not allege that the Website disguised the subscription he selected as a one-time purchase, misrepresented the nature of the transaction, or otherwise prevented him from understanding that his purchase would automatically renew. Nor does he allege actual confusion, deception or reliance. Absent such plausible allegations, his CLRA claim fails as a matter of law and should be dismissed.

          2.    <u>Licea Cannot Pursue a CLRA Claim Because he Did Not File a Venue Affidavit</u>

The CLRA requires a plaintiff to file an affidavit showing venue is proper "concurrently with the filing of the complaint." Cal. Civ. Code § 1780(d). "If a plaintiff fails to file the affidavit required by this section, the court shall, upon its own motion or upon motion of any party, dismiss the action without prejudice." *Id*. Licea did not file the required affidavit, warranting dismissal of his CLRA claim.

          3.    <u>Licea Did Not Comply with Section 1782 And Cannot Maintain a Claim for Damages Under The CLRA</u>

Licea's claim for damages under the CLRA fails for the independent reason that he did not comply with the statute's mandatory pre-suit notice requirement. The CLRA requires that, "[t]hirty days or more prior to the commencement of an action for damages," a consumer must: (1) notify the defendant "of the particular alleged violations" of Civil Code § 1770; and (2) demand that the defendant "correct, repair, replace, or otherwise rectify" the alleged violations. Cal. Civ. Code § 1782(a); *Morgan v. AT&T Wireless Servs., Inc.,* 177 Cal. App. 4th 1235, 1259 (2009). The statute is designed to facilitate pre-litigation resolution and avoid unnecessary lawsuits. *Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 41 (1975).

---

[10] See *Price v. Synapse Group, Inc.,* 2017 WL 3131700, at *8 (S.D. Cal. July 24, 2017); *Zeichner v. Nord Security Inc*., 2024 WL 4951261, at *6 (N.D. Cal. Dec. 2, 2024); *Morrell v. WW Int'l, Inc*., 551 F. Supp. 3d 173, 182-83 (S.D.N.Y. 2021).

MEMORANDUM OF POINTS AND AUTHORITIES

Because that purpose is central to the statutory scheme, courts require strict compliance with § 1782 before a plaintiff may pursue CLRA damages. *Allen v. Similasan Corp.,* No. 12cv0376–BTM–WMC., 2013 WL 5436648, at *2–3 (S.D. Cal. Sept. 27, 2013). Licea's counsel's January 8, 2026 letter to Laird falls short of this standard. (Compl. ¶53; Vieth Decl. ¶ 8; Ex. C.)

*First*, the letter does not identify Licea at all. (*Id*.) The letter was sent by counsel on behalf of an unspecified "California consumer", not Luis Licea. Section 1782 requires notice from "the consumer" asserting the claim, not an unidentified consumer. Without identifying the claimant, Laird is deprived of the ability to investigate the allegations, evaluate the specific transaction at issue, or meaningfully respond. Licea's anonymous notice undermines the statute's purpose and basic due process principles.

*Second*, the notice fails to identify the product or transaction at issue. A CLRA notice must identify the specific product at issue. *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1016-17 (N.D. Cal. 2014) (dismissing CLRA claims where notice failed to identify all products at issue). Here, the letter refers only to a generic "purchase" of an unspecified product on an unspecified date. It contains no reference to the Peanut Butter Protein Bars at issue in the Complaint—or any product at all. Defendant was not offered an adequate opportunity to investigate the claims.

*Third*, the notice fails because it does not identify the specific misrepresentations or omissions Plaintiff now challenges. A compliant CLRA notice must describe the "particular alleged violations" of section 1770. Cal. Civ. Code § 1782(a). Courts strictly enforce this requirement, dismissing claims based on theories not specifically identified in the notice. *See Similasan*, 2013 WL 5436648, at *3; *Ruszecki v. Nelson Bach USA Ltd.*, No. 12–cv–495–L(NLS), 2015 WL 6750980, at *6 (S.D. Cal. June 25, 2015). Here, the notice contains only vague, conclusory assertions that the website did not "clearly and conspicuously disclose" certain terms. It does not identify which specific webpages are at issue, and why they were

24

MEMORANDUM OF POINTS AND AUTHORITIES

allegedly inadequate. A boilerplate assertion of noncompliance is not notice of "particular alleged violations". Because Plaintiff failed to provide compliant pre-suit notice, he is statutorily barred from pursuing damages pursuant to the CLRA. Courts routinely dismiss such claims where, as here, the notice requirement has not been satisfied. *See Waller v. Hewlett-Packard Co.,* 2011 WL 6325972, at *6 (S.D. Cal. Dec. 16, 2011) (dismissing CLRA damages claim for failure to provide adequate notice).

### E.    Licea Has Failed to Meet the Heightened Pleading Standard of Rule 9(b) and Dismissal of His Consumer Protection Claims is Required

Licea's claims that sound in fraud "must meet the heightened pleading standards of Rule 9(b)." *Rutter*, 2022 WL 1443336, at *8 (*citing Kearns v Ford Motor Co.*, 567 F.3d 1120,1125 (9th Cir. 2009)(noting that UCL claims under the fraud prong must meet the heightened pleading standards of Rule 9(b)); *Maisel v. S.C. Johnson & Son, Inc.*, No. 21-cv-00413-TSH, 2021 WL 1788397, at *7 (N.D. Cal. May 5, 2021) ("Rule 9(b)'s heightened pleading standard applies to UCL, FAL and CLRA causes of actions because they are 'grounded in fraud' or 'sound in fraud.'") (citations omitted)).

The Complaint alleges generally that Laird "intentionally misrepresented and concealed material facts from Plaintiff", that "said misrepresentations and concealment were done with the intention of deceiving Plaintiff and Class members, and depriving Plaintiff and Class members of their rights and money." (Comp. ¶¶47, 48). But these generalized allegations are insufficient under Rule 9(b). Licea must allege that a fraud was committed on him with requisite particularity. In this regard, Licea's complaint utterly fails. As demonstrated above, Licea has not and cannot plead his reliance on any allegedly fraudulent misrepresentation or omission made by Laird to him—he does not allege when and what representations he reviewed, what they meant to him and how they influenced his conduct, if at all. This is fatal to his fraud-based claims. There is no who, what, when, where and how alleged anywhere

MEMORANDUM OF POINTS AND AUTHORITIES

in the complaint that would support a claim based on fraudulent misrepresentations or omissions made by Laird to Licea, upon which he justifiably relied, and which caused his damages. As such, each of Licea's claims sounding in fraud must be dismissed. *See Rutter*, 2022 WL 1443336, at *8.

### F.    Plaintiff Cannot Seek Equitable Relief

#### 1.    Legal Standard Applicable to Rule 12(b)(1)

Article III of the United States Constitution dictates that jurisdiction of the federal courts extends only to actual cases or controversies. To satisfy the Article III standing requirements, a plaintiff must show: (1) that he has suffered injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). With respect to the injury in fact requirement, the Supreme Court has held that the injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical..." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Spokeo, Inc. v. Robins* 136 S. Ct. 1540, 1545 (2016). Where a complaint makes allegations of potential future injury, the threat of future harm must be "certainly impending" as opposed to a mere possibility. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *Lujan*, *supra*, 504 U.S.at 564.

#### 2.    Plaintiff Lacks Standing to Pursue Injunctive Relief

A party seeking injunctive relief from a federal court must allege not only that he has "suffered or is threatened with a concrete and particularized legal harm," but also that there is "a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). And where a plaintiff fails to allege facts showing that he is threatened with a "concrete and particularized" legal harm

MEMORANDUM OF POINTS AND AUTHORITIES

coupled with a sufficient likelihood that he will again be wronged in a similar way, he lacks standing to seek prospective injunctive relief. *See Castagnola v. Hewlett-Packard Co.*, 2012 WL 2159385, at *5 (N.D. Cal. June 13, 2012) (citations omitted). There is "'no danger that [a party] will be misled in the future;" where the party is aware of an advertising he now claims is false. *Ham v. Hain Celestial Group, Inc*, 70 F. Supp. 3d 1188, 1196 (N.D. Cal. 2014); *Morgan v. Wallaby Yogurt Co.*, 2014 WL 1017879, at *6 (N.D. Cal. Mar. 13, 2014).

Here, Licea does not and cannot allege a risk of a "certainly impending" injury. He was and still is undeniably aware of the Website's automatic renewal terms and Laird's cancellation policy and procedure. He now knows that the Website disclosures mean what they say and that when he selects the "Create Recurring Subscription-Save 20%" option and agrees to "subscribe" with delivery every 30 days, it means just that. He is also aware of Laird's cancellation policy and procedures and knows what to do should he choose to cancel his subscription at any time. There is no imminent risk of harm and unlawful conduct to enjoin. It follows that Licea lacks standing to seek such relief.

> 3. Plaintiff Lacks Standing to Seek Equitable Relief Because he has an Adequate Remedy at Law

Licea must establish that he lacks an adequate remedy at law before securing equitable relief for purported harm under the UCL, FAL, or CLRA. *Sonner v. Premier Nutrition Corp.,* 962 F.3d 1072, 1081 (9th Cir. 2020); *Philips v. Ford Motor Co.,* 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) ("A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available.") (citations omitted)). *Hoard v. Cap. One, N.A.*, No. 24-CV-1133-MMA-VET, 2024 WL 4611449, at *6 (S.D. Cal. Oct. 29, 2024) ("it is appropriate to determine at the pleading stage whether Plaintiff has alleged that she lacks adequate remedies at law before allowing her UCL claim to proceed.")

MEMORANDUM OF POINTS AND AUTHORITIES

While Licea attempts to plead around *Sonner*, *see* Compl. ¶¶ 28-31, his allegations simply confirm that he has an adequate remedy at law. Licea seeks damages under the CLRA. Those damages are the "same as what may be obtained as restitution." *Phan v. Sargento Foods, Inc.*, No. 20-cv-09251-EMC, 2021 WL 2224260, at *5 (N.D. Cal. June 2, 2021); *Sargento Foods*, 2021 WL 2224260, at *5 ("Plaintiffs have simply speculated that restitution and damages could be different"). If Licea's legal claims fail to deliver the relief he seeks, it will be because those claims failed on the merits, not because they were inadequate. Nor does it matter that the claims are slightly different.[11] A plaintiff's legal and equitable claims need not be identical for a legal remedy to be adequate. Instead, the relevant question is whether the legal remedy is "fitted or adapted to the end in view." *Thompson v. Allen Cnty.*, 115 U.S. 550, 554 (1885). "[A]n alleged difference in the amounts Plaintiff may seek as damages and restitution does not make damages inadequate." *Nguyen v. The Lovesac Co.*, No. 2:24-cv-01293-TLN-JDP, 2025 WL 950511, at *6 (E.D. Cal. Mar. 28, 2025); *Ketayi v. Health Enrollment Grp.*, No.: 20-cv-1198-GPC-KSC, 2021 WL 2864481, at *10 (S.D. Cal. July 8, 2021) ("[i]t would be anomalous for [*Sonner's*] rule to be avoidable merely because of the reality that claims for restitution and damages often will result in different recoveries"); *Guzman v. Polaris Indus. Inc.,* 49 F.4th 1308, 1313 (9th Cir. 2022), *cert. denied*, 2023 WL 3937623 (June 12, 2023). Plaintiff fails to plausibly allege facts demonstrating that he lacks an adequate remedy at law. *Zapata Fonseca v. Goya Foods Inc.*, No. 16-CV-02559-LHK, 2016 WL 4698942, at *1, *7-8 (N.D. Cal. Sept. 8, 2016) (dismissing CLRA, UCL and FAL counts where the plaintiff also brought claims for breach of warranty and negligent misrepresentation). Moreover, the fact that an injunction may be an

---

[11] Licea claims that because his UCL and FAL claims "are predicated on specific statutory provisions under the ARL", he will be able to prove those "straightforward" provisions if he cannot prove his CLRA claims. Not so. His claims under all three consumer statutes require that he make a showing of reliance, causation and damages. All three claims are supported by the same facts and arguments and all fail for the same reasons as discussed above.

MEMORANDUM OF POINTS AND AUTHORITIES

available remedy does not necessarily leave it the only adequate remedy. *Hoard*, 2024 WL 4611449, at *7.

### G.   Plaintiff Cannot Pursue Punitive Damages

To seek punitive damages, a plaintiff must allege that the defendant has been guilty of oppression, fraud, or malice. Cal. Civ. Code § 3294. A corporate entity cannot commit willful and malicious conduct; therefore, punitive damages can only be sought if the plaintiff alleges that the wrongful conduct was committed, authorized, or ratified by an officer, director, or managing agent of the corporation. *Id.; Roper v Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 926 (E.D. Cal. 2020). Licea has failed to do so here. *Golikov v. Walmart Inc.*, No. 2:24-cv-08211-RGK-MAR, 2025 WL 648532 at *5 (C.D. Cal. Feb 27, 2025.)  Licea does not allege an "officer, director, or managing agent" of Laird authorized or ratified the alleged misconduct which is requisite for punitive damages against an entity. Licea's prayer for punitive damages merely rests on his consumer protection claims. These allegations are insufficient to satisfy a claim for punitive damages. *Id*.

## IV.   <u>CONCLUSION</u>

For all the reasons stated herein, Licea's complaint fails as a matter of law and should be dismissed with prejudice.

Dated:  May 25, 2026                    STEPTOE LLP


By:  _____*/s/ Melanie A. Ayerh*_____
                    Carol R. Brophy
                    Anthony G. Hopp *(pro hac vice forthcoming)*
                    Melanie A. Ayerh

          Attorneys for Defendant
          LAIRD SUPERFOOD, INC.

MEMORANDUM OF POINTS AND AUTHORITIES